Mr. Justice Hag-ner
delivered the opinion of the Court:
These seven cases, which have been argued together, 'were instituted to recover damages in respect of nuisances *312 alleged to have been occasioned by the unlawful use of Maryland and Virginia Avenues, by the trains of the defendant company, in front of the dwellings of the several plaintiffs fronting on one or the other of those avenues.
In each case a verdict was rendered for the plaintiff, and the appeals are taken from the rulings of the Court below against the objection of the defendant.
The instructions of the trial justice in the several trials are identical, except that in the cases of Richards and Strobel additional propositions of law were presented, touching the technical objections interposed by the defendant to the title of those plaintiffs to the property occupied by them respectively.
The justice below, in framing the four instructions appearing on the pages 25 to 30 of the record in the Hopkins Case, followed the decision of this Court in General Term in the cases of Neitzey and Anderson against this company, 5 Mackey, 34.
In those cases the General Term approved the instructions given by the justice below, with the exception that it was held error to have included as an element of annoyance in the nuisances complained of the loud talking and profanity alleged to have attended the loading and unloading and shifting of the defendant’s cars on Maryland Avenue; but declaring it saw very little to find fault with in the rulings below, it pointed out no other error in those instructions.
The first instruction granted at the instance of the plaintiffs in the present cases, in its substantial features, is identical with that recited in 5 Mackey, 44, except that it omits all reference to the alleged noises from the profane swearing; it is, therefore, directly in conformity with that decision of the General Term.
The second instruction was addressed to the nuisances alleged to have been caused by the company in permitting its locomotive engines to stop on the avenue between the' *313 streets named, in front of the plaintiffs’ dwellings and “to remain there longer than was necessary in the conduct of its through business, and to the full and careful use and enjoyment of its freight depot or station,” “making offensive noises and giving forth soot, cinders, steam and disagreeable odors,” etc., and the third related to the storage in front of plaintiffs’ dwellings of loaded and unloaded cars, in filthy condition, emitting filthy smells of guano, manure, etc.
In 5 Mackey, the Court announced distinctly that this company is not authorized under its charter and the acts of Congress to convert the public highways of this city (Washington) into freight yards. “The proper place for cars when not in use,” says the Court, “ is the depot, station or yard of the company; and the proper place to load and unload freight is a freight station. . It has no right, therefore, to incumber the street with cars and to leave them there when not in use. That is an unauthorized occupation of a public highway.”
“But when these cars have been used for the conveyance of offensive matter so as to infect the whole atmosphere with noxious odors, and when the freight, loaded and unloaded there, consists of similar material, and the ’process of bringing the cars there and taking them away for the purpose of loading and unloading causes annoyance by jarring the neighboring houses, and the smoke from the engines penetrated the dwellings- — -all this, then, becomes more than a public nuisance; it becomes a private nuisance; so that the declaration in this case sets forth clearly an actionable nuisance — the occupation of this street in a way that was offensive and injurious to the private property in the neighborhodd and to the persons occupying it — and the proof clearly makes a case. Therefore no occupation of the street for these purposes can be reasonable.”
These three instructions are in entire accordance with those views; and the action of the Court in granting them is, therefore, affirmed.
*314 The fourth instruction had a more especial reference to the use of Maryland Avenue by the company for shifting and making up its freight trains, in addition to its alleged loading and unloading of freight and the alleged leaving the cars standing in the avenue for an unreasonable time. We hold the only use that can lawfully be made of Maryland Avenue by the company in shifting and making up its trains must be confined to such use as may be reasonably necessary for the purpose of carefully taking its cars into, or of carefully taking its cars out of, the station, to place them in freight trains on the track. To authorize the occupation of the avenue as a general shifting ground would be to subject it to a use that could not have been contemplated by the Legislature when it authorized this company “ to extend its lateral branch,” “ by way of Maryland Avenue to the Long Bridge.” Such an occupation would constitute a nuisance more grievous and far more dangerous than the other complained of; and would almost amount to a practical condemnation of this part of the avenue as the private property of the company. It would then enjoy its undisturbed use as a freight yard, free from the charges for public dues or for purchase-money or rent that other corporations and individuals are compelled to pay when they seek to acquire lands for such purposes.
A railroad company may and should possess itself of proper accommodations on its own property, where this dangerous process of shifting and making up trains may be conducted in safety, without continual risk and inconvenience to the public. Citizens have the right at all times to cross and travel the streets and send their children and servants along them on lawful errands without peril or delays, and to enjoy some intervals of quiet from the noises of movements that should be conducted within proper inclosures of this company, in more secluded por *315 tions of the city, where ampler accommodation could be found than is now afforded within the freight station on Ninth Street, which is admitted to be insufficient for that purpose.
We think the fourth instruction was a correct exposition of the law, and it is affirmed.
The fifth instruction as to the measure of damages is not objectionable.
It is unnecessary to consider in detail the numerous prayers presented by the defendant in these cases. Several of them were granted by the Court below, which gave to the company the benefit of a very liberal construction of some of the propositions they severally presented. We proceed to notice some of those rejected by the Court below which 'were not distinctly considered by the General Term in 5 Mackey.
The Court was right in refusing to declare that the property owners on Maryland Avenue, between Ninth and Tenth Streets, were not entitled to recover in respect of any of the nuisances complained of that might have occurred “between the west line of Ninth Street, and the east line of Tenth Street.” If this proposition is correct, neither could the property owners between Eighth and Ninth Streets, and between Tenth and Eleventh Streets recover for nuisances occurring in the beds of Ninth and Tenth Streets; and there would be no accountability on the part of the Railroad Company for nuisances in those streets, where they cross the avenues, to any citizen, however seriously he might be injured by their commission.
The eleventh prayer in the Hopkins' Case, and which is repeated in the other cases, mutatis mutandis, is as follows:
“The space of sixty feet inclosed by the two lines of curb by the Board of Public Works, within which are the tracks of the railroad, and between the streets.-running north and south, was set aside by the proper authorities of the District *316 of Columbia for railroad purposes; and the plaintiff cannot recover under the pleadings in this case for any discomfort to him or his family or other injury caused by the loading or unloading of cars at that place.”
This was properly refused. No such immunity from responsibility for nuisances committed within the inclosed spaces could properly result from the action of the Board of Public Works, assumed in the prayers to have been performed by these officials.
In several of the present cases the Court refused to give this instruction:
“The defendant possessed the lawful right to carefully use the tracks in front of the plaintiff’s premises on Maryland Avenue, between Eleventh and Twelfth Streets, so far as the same were necessary or convenient for the láwful and careful use of its yards and cattle-chute therein at Fourteenth Street.”
We were referred to the ruling of the justice below in the Neitzey Case, in which, as it is contended, the Court granted a similar instruction. But in the latter case the right to such use was confined to such use as was necessary> and was not extended to occasions of convenience also. But we think both instructions should have been refused, since nothing appears in the records before us to support the conclusion that the “yard and cattle-chute therein at Fourteenth Street,” is such a station or freight depot as the company has been authorized by act of Congress to connect with its railroad tracks, in the manner appearing in the record.
No verbal testimony describes particularly the mode of access to the yard referred to. But the plat offered by the defendant at the trial below and made part of the record here shows that the lot is approached from the track laid within the central sixty foot space, over rails laid in a northwestwardly direction to the foot pavement of Maryland *317 Avenue, and thence across the bed of Thirteenth-and-a-half Street into the lot which lies between the last named street and Fourteenth Street.
The decision of the Supreme Court of the United States in the recent case of the District of Columbia vs. Balt. & P. R. R. Co., 114 U. S., 460, declares that, in the absence, of authorization by Congress, this company would not have the right at its pleasure to leave the bed of Maryland Avenue and cross with its tracks any street in the city for the purpose of entering a lot it may propose to use as a depot; that the right to use the streets of the city for any other than ordinary purposes must proceed from Congress; that in the absence of express authorization by Congress the defendant company has no power to lay its track across any street or to leave Maryland Avenue on its way from Ninth Street to the Long Bridge; and that, to use its own language, “ When this company wishes to depart in any direction from the line of its present track, as prescribed for it by acts of Congress, it must obtain permission to do so from that body; and that Congress, and not the Court or the company, is the judge of the expediency or necessity of such change, and of the manner in which the public good requires it to be made and the safeguard which shall accompany it.” If the plat correctly represents the state of facts, -the decision of the Supreme Court would seem to be conclusive of this point.
The other prayers offered in behalf of the defendant contained either express negations of the former utterances of this Court, or contradictory propositions substantially the converse of the instructions granted by the Court below in the present cases which we have approved; and it is, therefore, unnecessary to say more than that they were properly refused.
In the cases of Strobel and Richards the further objection was made that neither of these plaintiffs held the entire title to the dwellings they occupied..on Virginia Avenue, *318 but that each was in possession merely as the widow’ of her deceased husband.
As such, of course, neither could recover for any injury sustained by other persons interested in the estate, nor for any inconvenience to any other inmates of the house.
This was distinctly told to the jury by the justice below in each case. It cannot,be contended that either widow was a trespasser; and having the right of possession, she may well maintain an action for the personal annoyance to herself resulting from the grievances complained of.

The rulings in all the cases are affirmed.